The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business. Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention to the court of messaging. I say the United States and its Honorable Court. All right, good afternoon, everybody. Welcome to the Fourth Circuit. We have three cases on the 2217 Blissful Enterprises v. Cincinnati Insurance Company. And Mr. Lawson, we'll hear from you. Good afternoon, Your Honors. Eric Lawson with Silver and Brown for Blissful Enterprises, Inc. This is an appeal involving the interpretation of a first-party property insurance policy and as such is reviewed de novo. First-party property insurance, as this court is aware, is a contract which contains a promise by an insurer to pay the insured if there is a non-excluded loss to covered property. The insurance policy in this case is 139 pages long and it's located at the Joint Appendix 14-153 or Joint Appendix 509-648. In this case, the main policy excludes all damage to underground pipes. But my client, the hotelier, purchased for an additional premium a special hotel endorsement that covers underground pipes that are attached to the building. The insurance company in this case and the lower court have read this policy in such a complicated way that my client could never have expected that he wasn't covered for damage to underground pipes that were attached to the building when he purchased that additional insurance to cover those specific underground pipes. Your Honors, modern insurance policies are constructed out of modular pieces which make them difficult to read because even a relatively simple concept like adding back-end coverage for requires rewriting multiple portions of the policy. But ultimately here the issues are very simple. This policy covers underground pipes that are attached to the building. It covers collapses of covered property if the collapse is caused by hidden decay and it does not exclude losses that result in earth movement as opposed to being caused by earth movement. The main policy form, the building and personal property coverage form including special causes of loss at joint appendix 36 excludes from the definition of covered property all underground pipes. But the hotel endorsement, which is a separate policy form, adds back-end express coverage for the subset of underground pipes that are attached to the building and that's at joint appendix 113 to 114. Section J. If I could ask you about that. Sorry, it's just Diaz here. So I'm following you there but then and I'm with you up to this point, but doesn't that loss then have to be, doesn't that loss then have to result from a covered cause of loss and don't we then go back to the definition of what a covered cause of loss is and doesn't that exclude losses due to decay? It excludes many losses due to decay, your honor, but it's a collapse caused by decay is a covered cause of loss. You know that because when you read the main insuring clause of the policy, it says that we cover all covered causes of loss, which is defined as all direct physical risks of loss and then you, unless excluded or limited, and then you look at the exclusions and the exclusions say that collapse is an excluded cause of loss except if it's the collapse that's referred to in the which is it's stipulated in this case that that's what caused the loss, the collapse due to decay. So what the underlying court did is it separated out and only considered collapse in a vacuum and then it looked at the underground pipes coverage in a vacuum and what it should have done is said, okay, underground pipes is covered. Was there damage to underground pipes attached to the building by a covered cause of loss? And then it can look to the collapse exclusion and say, wait, there's an exception here, which is that collapse caused by decay is a covered cause of loss. Well, Mr. Lawson, Mr. Lawson, let me ask you this. Do you, is this policy ambiguous or unambiguous? Your honor, I think that it's complicated, but it is unambiguous to the extent that underground pipes that are attached to the building are covered. Let's assume that your opposing counsel agrees with you that it's unambiguous. And so, would you agree that it's a question of law? And if it is a question of law, since there's no Maryland law on the connection between these extensions and whatever, shouldn't the Maryland Court of Appeals get a bite at answering that question first? I'm talking about certifying the question. That would be something that would be appropriate if the issue boils down to predicting how the property is covered. Yes, your honor. But I really do think it's so clear that there is no, the language for this coverage extension only in subsection three of JJ is meant to change the definition of covered property so that underground pipes attached to the building are covered property when you're dealing with a loss to underground pipes. And I think that what I'm talking about when I say that the- Mr. Lawson, so I'm sorry, just Diaz again. So, how do you get there? Why do you say that? Because if you didn't change the definition of underground property under the policy, and you left it as not covered property, it would be ambiguous. Because the insuring clause in subsection JJ of the hotel endorsement would conflict with the main policy form if underground pipes were uniformly not covered property. And so they have to, in order to make sure that underground pipes attached to the building are covered, they have to carve out an exception to the portion of the main policy form that says underground pipes aren't covered property. And that's all that definition change in subsection three of JJ is intended to do. And the reason I'm saying that the distinction there is with respect to whether or not the pipes are attached to the building is because the underground pipes endorsement doesn't make all underground pipes covered property and it doesn't insure for losses for all underground pipes. It only insures for underground pipes attached to the building. And you only know that if you go to section one of JJ and you read it in its entirety and it says we will pay, that makes it an insuring clause, we will pay for covered causes of loss resulting in damage to underground pipes that are attached to the building. And so what the policy does is the hotel endorsement, which can be appended to any standard commercial property main policy form, and it was in this case, it needs to modify that definition of covered property to add back in underground pipes that are attached to the building. It's not... Mr. Lawson, let me ask you this. Your expert conceded that the pipe, that corrosion impacted the pipes ability to hold the water. Why wouldn't it be excluded under the corrosion exception? Yes, your honor. So that is an issue of the application of the efficient proximate causation doctrine, which says that if there is a covered cause of loss and a non-covered cause of loss, it's still covered unless the policy has modified the efficient proximate causation doctrine by including anti-concurrent causation language. Does that create a question of material fact so that summary judgment was not appropriate? I believe it would, your honor, except for the fact that this loss was stipulated to have been caused by collapse caused by decay. And collapse caused by decay is itself a covered loss. And so what you have is... I have a question about that, counsel. Sorry to interrupt your answer. I do want to let you answer Judge Floyd, but this is the second time you mentioned it's stipulated that the damage was caused by a collapse caused by decay. I thought the parties filed cross motions for summary judgment here, and that the insurer said for purposes of their motion, they would accept that collapse caused by decay was the cause. And they said, even if that's the case, we win. But that they weren't actually stipulating to that as a fact for purposes of your motion for summary judgment. So that even if we agree with you, we'd need to remand for that factual question to be determined. Is that correct? Or is there actually a stipulation I'm missing? That is correct. I was relying on the statement made by the lower court in their opinion, which says Cincinnati accepts that the collapse issue was caused by decay, but challenges that the collapse caused a loss to covered property. And so I think that the lower court's decision should be reversed if that is true, because the collapse did cause a loss to covered property. You just need to start in the hotel endorsement when you're doing your analysis and say that the insurance company has not conceded that this pipe was damaged by a collapse caused by decay, as a matter of fact. I agree with that, with your statement, Your Honor, yes. Okay, thank you. So I think that the issue here is that the reading of the policy advanced by the insurance company and the lower court is a hyper-technical one, where instead of reading the entirety of the policy at the same time, the insurer has requested that the court conduct a two-part analysis. One, first with respect to collapse coverage, and then with respect to the underground property coverage. So Mr. Lawson, let me ask you about that, because that's their argument, and part of the basis for that argument is that the underground property extension coverage is prefaced by a limiting clear to your colleague that it's whatever definitions and whatever language is included in that extension applies only to that coverage extension. And what you're proposing is that the court, and I guess you're urging that the district court should have done this as well, that you mix and match and that you blend these extensions together to arrive at a finding of coverage, but it doesn't appear that that's what the language would allow. So I think I would dispute the statement that the prefatory language applied to the underground property extension because it's only found in subsection 3. The subsection 1 does not say for this coverage extension only, and instead what subsection 3... I'm sorry, what is subsection 1? Subsection 1 is the insuring clause that says we will pay for damage to underground pipes if they are attached to the building. Okay. And so I think you start there, and the question has to be, was there damage to underground pipes attached to the building? And if so, was it caused by a covered cause of loss? And then what you say, and because you're within that clause, you then apply subsection 3, which modifies the definition of covered property to include those underground pipes that are attached to the building, but not other underground pipes. And then you go to the start of the policy, and you look to see whether or not there was a covered cause of loss. And in this case, there was. There was collapse caused by decay. And that's... Go ahead. Go ahead, Judge Floyd, go ahead. I mean, you say it's not ambiguous, but there is an alternating of the language for this coverage extension only used throughout that endorsement. Does that make it ambiguous, or...? Your Honor, that may be an ambiguity insofar that I believe you're referring to subsection 2 as the language for this coverage extension only. But maybe if what you're trying to explain is that there could be an ambiguity if reasonable minds can differ with respect to the meaning of the words for this coverage extension, for the modification of the definition, whereas we interpret that to mean that it's for losses involving damage to underground pipes attached to the building, and the insurer is arguing, alternatively, that it means limited only to that coverage extension to the exclusion of like an ambiguity that ought to be dispositive against my client, because he specifically bought coverage for underground pipes that were attached to the building. And if there's a covered cause of loss to one of those, there ought to have been coverage. And that's the underlying holding that we have an issue with, is that it seems so backward that someone can have a policy that doesn't cover underground pipes, buy coverage for underground pipes attached to the building, have a loss to those pipes, and then have it be held that loss is not covered because you're not covered for all covered causes of loss to that kind of property. That's not clearly excluded under the policy. I mean, insurance policies do that all the time. I guess the one question, maybe you've made this argument in your papers, I don't recall, is that it really doesn't provide any coverage if read according to what the other side is interpreting it. Is that your point? Yes, Your Honor. That is a point that we've made, that the coverage would be illusory. And I know I only have 10 seconds, but with respect to the earth movement, I think it's very clear from the expert reports that earth movement was a result of the loss, or at least that's a disputed issue of material fact with respect to the application of the earth movement exclusion. Thank you, Your Honor. All right. Thank you, Mr. Lawson. Mr. Green. Good afternoon. May it please the court, Brian Green for the Cincinnati Insurance Company. And what I'm here to do is ask the court to affirm the judgment of the district court to apply the plain and unambiguous language of this text, nothing more and nothing less. Now, the first issue is first, the underground property extension does not apply because of this loss does not arise from a covered cause of loss. Second, the collapse extension does not apply because there was no damage to quote covered property. And we didn't get into the estoppel argument today. But case law is quite clear that Cincinnati isn't a stop from asserting its coverage defenses here. Now, to start with the underground property extension, it was represented that the loss to underground pipe. That's not exactly what it says. What it says is, and this is at page 113 of the appendix, we will pay for loss resulting from any of the covered causes of loss. Covered causes of loss at page 38 of the appendix is defined to mean any risk of direct physical loss unless the loss is excluded. For the reasons that we've discussed, there are three applicable exclusions. One, the rust or other corrosion decay, and that's at page 40 of the appendix, the earth movement exclusion at 38 and the collapse exclusion. Now, as we've also talked about, the plaintiff's expert concedes that this is resulting only from corrosion or decay. The analysis could simply end there. My colleague referred to the efficient proximate cause rule as a reason why this exclusion potentially doesn't apply. But what I direct your attention to is the quote from plaintiff's expert. He says, if there was no corrosion of the pipe and the subsequent loss of integrity, there does not appear to be any other mechanism to result from the exposure of the surrounding soils and they're being impacted by the flow within the storm drain. That's a direct quote. Now, what the efficient proximate cause rule holds, and actually, Judge Rushing and I talked about this a little bit last month in the Driblet case, what the efficient proximate cause rule holds is that generally we're going to look for the root cause of the loss, the thing that started the chain of causation. That's what the efficient proximate cause rules can apply. That is exactly what the plaintiff's expert says in this case, that the root cause of the problem was corrosion. Therefore, by the plaintiff's own admission, that exclusion must necessarily apply. Additionally, the earth movement exclusion applies. Now, what's different about the earth movement exclusion... But you don't have, I mean, your friend on the other side points out there's no anti-concurrent cause language here. So don't we need something, if you're going to hang your hat on the expert, don't we need something a little firmer to rule out all other causes? Doesn't it need to be the sole cause if there's not anti-concurrent cause language? So, efficient proximate cause doesn't equate to sole cause. What it equates to is root cause, the thing that started it in motion. So I think it goes too far to say it's the sole cause. In fact, there is no such thing as a sole cause. In a philosophy course, we talked about it again in the Paul's graph case about a boy throws a stone into a pond and it changes for all eternity. But efficient proximate cause doesn't mean sole cause. It means the root cause, the predominant cause. And that's what the corrosion is. That's what their expert says. But to your point about the anti-concurrent causation language, you're correct. That doesn't appear in the corrosion exclusion, but it does appear in the earth movement exclusion. That if the cause appears anywhere along the chain, that's going to apply. And then in addition to the earth movement exclusion, the policy specifically excludes collapse. Now, the collapse exclusion is a page 42 of the appendix. And it says basically that exclusion is going to apply unless the policy provides otherwise. Now, to the insurer's credit, there is the collapse extension that we're going to analyze. And we're not going to hold the collapse exclusion against the insured for purposes of that coverage extension. But for the remainder of the policy, it absolutely doesn't apply. I don't follow that. So the insured says if we're at the underground property coverage extension and it says we will cover losses caused by a covered cause of loss. Correct. So just as you're saying, we go look and see what is a covered cause of loss. And covered cause of loss excludes collapse except as provided in the collapse extension. So a covered cause of loss is collapse if it's as provided in the extension. So we have to go to the extension to understand what is the policy cover, what's a covered cause of loss for purposes of this policy as it pertains to collapse. And then we read that and it says, you know, collapse caused by whatever it is, hidden decay and things like that. So why is that wrong? I don't understand how you, I mean, the covered cause of loss specifically says collapse is excluded except as provided in this extension. But then you want us not to read the extension. Well, there's not coverage under the property extension in addition to the earth movement exclusion and the corrosion exclusion as well. So that actually brings us to part two of the argument where we actually analyze the collapse exclusion and the collapse extension. The collapse extension does not apply because there was no loss to covered property. But no, no, no. We just start, we were back, we're still under the underground pipes extension, which says underground pipes are covered property. And then it tells me there and losses to this covered property are covered if they're caused by a covered cause of loss. So I go to see what's a covered cause of loss. And it tells me collapse is not covered unless it is under the extension. So I go to the extension and it describes to me what a covered collapse is. And I'm still working, you know, we're still quote unquote under the underground pipes extension because that's where we started. That's where we started our journey. So why is that not covered property? I don't see how you can cut out, well, some causes of loss don't apply to the underground pipes extension, but other causes of loss do. But still, if you're looking at the underground property extension, we're analyzing whether collapse can be used as a reason to classify this as something other than a covered cause of loss. Even if we were not to consider the collapse exclusion at page 42, the rust or other corrosion decay exclusion at 40 or the earth movement exclusion at 38 would still apply, thus removing that whole issue from the analysis. And that's really what the lower court did is they said, look, you know, their own expert says that this is corrosion. The analysis could end there, but we'll continue on. We observe that earth movement applied here too. And so I don't think it's really necessary to reach a conclusion on whether the collapse exclusion applies. The fact of the matter remains two others undeniably do. But did that answer your question, Your Honor? Well, you told me why you went under the other exclusions, but I'm not sure that you've made much headway on why we shouldn't consider the collapse extension. Okay. So moving on to that point, the collapse extension, when we talk about what covered property is, we actually do, as you mentioned, go back and we see that under the main base policy, the business and personal property coverage form, underground pipes are not covered property, period. The way they become covered property for the limited purpose of the underground property extension is because subsection 3 says for this coverage extension. And that's exactly what it says. Now, what it doesn't say is for all coverage extensions, it says for this coverage extension with a singular extension, if it meant to all the extensions, then it would have the plural form. And it says that it doesn't actually grant back covered property status for all underground pipes. What it does is it grants back covered property status for quote, except as provided in section A coverages by coverage extension, the underground property extension. And what's notable about that. Mr. Green, what did they buy when they bought this extension? It looks illusory to me. Yeah. So the legal principle of an illusory contract is basically you're bargaining and you got nothing and no promises actually made. And the way I like to think about this, and I kind of talked about this in my brief is if you draw, like think of it as a Venn diagram and have a circle that represents the entirety of coverage. And then another circle that represents the entirety of an exclusion, a contract is illusory if the exclusion completely eclipses the coverage that they bought. Now that's not true here. Now, I agree with you that in this case it applies. And I think my opponent tries to invoke the reasonable expectation doctrine, which doesn't apply in Maryland. There was just a case, the Hamilton jewelry case decided by Judge Grimm where that was referenced. But here there are most certainly situations where the underground property coverage would apply. In the appellant's brief, he says that underground pipes don't burn, they don't freeze, they aren't damaged by lightning, but they are under all those circumstances. There would potentially be coverage for underground pipes. The fact of the matter that under these circumstances, a collapse due to decay excluded from coverage results in the denial of coverage. But there are certainly situations in the abstract where the underground property extension could apply. Likewise, the collapse extension, there are a plethora of situations where that extension could apply, just not here. A particular note, if you look at the collapse extension, again, that starts on page 52, the extension specifically goes on to talk about specific classes of property that are covered, even though they otherwise fall into the property not covered definition. So for example, we see that outdoor radio and television antennas are covered under the collapse coverage, awnings, gutters and downspouts, yard fixtures, outdoor swimming pools, fences, piers, wharves and docks, beach and diving platform, retaining walls, all of these things are covered property under the collapse extension. What that does is it shows an intent by the drafters to bring certain properties that are otherwise not covered back into the scope of covered property for the limited purpose of the collapse extension. But what you don't see among those classes of materials are underground pipes. Now, it stands to reason if, like all these other classes of material, if it was the intent for underground pipes to fall within the collapse extension, then you would see that listed under there, just like all the other pieces of property as well. In fact, what the policy shows is when the policy intends to bring covered property back into the policy full stop without any limiting restrictions, the policy says exactly that. For instance, you feel like Mr. Green, after all that explanation, it sounds like it's ambiguous to me. But I understand you're saying it's not. So my question to your opponent, should we just certify this question? Because there's just no law on it. No, I don't think that's the appropriate course of action. I mean, I think it's an available one, but not an appropriate one. And the reason is court insurance companies summon the diversity jurisdiction of federal courts all the time to resolve plain and unambiguous contract language. In fact, we're seeing that right now in the COVID cases, the COVID business interruption cases, where these work cases are working their way through the federal courts and insurers want to go to state court. And this court has twice denied motions to certify those types of coverage questions, basically agreeing with insurers saying this is routine policy language. The policy actually creates a flow chart for its analysis that I include in our brief. So in the very narrow sense, when we talk about issues of first impression, every case is unique. In the issue of first impression, because there's no other one like it. But we're not talking for about the kind of cases that are so ambiguous that we need to send this down to the lower court for this resolution. It really involves a simple flow chart to the policy language. And we've tried to show that in our brief. So I think that I respectfully submit that there's probably no need to certify this question. Did I appropriately respond to your question, Judge Floyd? Yes, sir. Now, going back to why the collapse extension, why the insert of coverage back in the underground property doesn't apply to the collapse extension, when the policy attempts to create a wholesale change to the policy where it's going to insert a class of property back into the covered property category, full stop, the policy says exactly that. So I'd refer you to Article 146 of the Joint Appendix, and we see retaining walls. The policy simply says retaining walls are covered, period, and stop. Similarly, there's a mandatory endorsement for gutters and downspouts where that class of property comes back in and pollutants. Now, contrast that with what we have here where the language says only for this coverage, it doesn't say only, admittedly, it says, quote, for this coverage extension, the policy comes back in. And Judge Floyd, you raised a question as to whether there's a distinction between why the language about underground pipes didn't use the word only, but foundations does use the word only. I would submit that that is immaterial for basically three reasons. One, it doesn't undermine the fact that the policy does say it only applies for this coverage extension. But two, even though foundations generally do not have covered property status, there are situations in the policy. And for instance, the civil ordinance discusses where there could conceivably be a situation where an insurance company could find itself paying for a foundation, even though it's not covered property status. Therefore, the extra bolster of the word only is required to say, hey, even though there are circumstances where the policy will respond to foundation, it doesn't bestow covered property status. So, I agree that that language is different. It's just immaterial for purposes of this analysis. And then, really, if Bliss were correct that the underground property extension bestows covered property status on underground pipes for the purpose of all coverages, that would really render subsections two through four of that extension meaningless. The policy could very simply just say underground pipes are covered, period, and that would be the end of the analysis. That's not what the policy says. And for that reason, the policy cannot be read as if it does say that. Finally, before I end, I did want to address, just because the briefs mention it, there's an argument that Cincinnati is stopped from denying coverage. That argument, I would submit, is erroneous for four reasons. One, the policy contains a no oral modification clause. It says it can only be modified via endorsement. That's at appendix 20. Two, the law is very clear that waiver and estoppel can only occur when it does not create new coverage. Here, the insurer is trying to rely on an email to say that coverage exists where it otherwise wouldn't. And then, finally, third, Blissville has presented no facts that would support estoppel. In order to show an estoppel, you have to have a detriment. Here, from the very outset, this is appendix 206, Blissville was advised that the cost to explore, rule out, and confirm resulting damages will be theirs to incur. Second, the engineer was retained long before the February 2nd email. Third, Blissville did not retain a public adjuster until after the coverage question was presented. Similarly, Blissville did not retain counsel until well after the coverage denial, and so there's been no facts here that would support an estoppel. Finally, there's one case that they rely on nationwide versus regional electric contractors for the proposition that an estoppel is appropriate. That case was when there was an auto case where an insurer was told to go get their car taken care of, and that's the quote from it, and they did just that. They went out and had the repairs performed in reliance on what was told. There are no similar facts here, and, in fact, in one beacon insurance versus Metro Mix, this court said that an estoppel may be appropriate only if the detriment occurred simultaneously, contemporaneously with the same statement. There's no evidence that there was a contemporaneous detriment incurred by Blissville that would give rise to an estoppel, so for that reason, there is insufficient evidence to support an estoppel either. That concludes the points that I have prepared for today. I'd happily field any other questions if the court has any of me, but otherwise, I would rest on the briefs. Thank you, Mr. Green. Mr. Lawson, you have some time for a rebuttal, and I'm sorry to jump right in right away, but I do want you to address something that Mr. Green talked about about midway through his argument. He made reference to this flow chart that appears at page 7 of his brief, and I have to say, you began your argument by saying this was a 130-plus page insurance policy with all kinds of different modules, and we all consider ourselves to be relatively intelligent judges and lawyers, but we don't deal with these policies all the time, and I'll be perfectly honest. This policy made my head spin when I tried to go through it. I'm not sure that I still completely understand it, but as I look at this flow chart, I'm sure you have some objections to the proposed answers in this flow chart, but it might be helpful for you to look at that and tell me where in the flow chart where Mr. Green describes the two extensions and his proposed answers to those extensions where he is wrong and why. We can't hear you, Mr. Lawson. Excuse me, Your Honor. Yes. I think you need to start with the proposition that an insurance company, as the drafter of the policy, has an obligation to write a clear policy, and that they can't rely on exclusionary language unless that exclusionary language is clear to an average person who, if they took the time to read the policy, would clearly understand what was covered and what wasn't. I think if you look at the flow chart on from underground property coverage extension, I think that you need to start your analysis with the underground property coverage extension, and then when you reach the question, does this loss arise from... Okay. So I'm sorry, Mr. Lawson. Sorry to interrupt you. Why did we start there? Why did we start there? Because the loss is to underground pipes that are attached to the building, Your Honor. And so if you didn't buy the hotel endorsement, you would not have any coverage for underground pipes at all. But there's a clause in JJ of the hotel endorsement that says, we will pay for damage to underground pipes if they're attached to the building. So you start there. And then the analysis becomes, was that damage caused by a covered cause of loss? And it's covered if it's not excluded. So then you go back to the beginning of the policy, figure out what a covered cause of loss is, which is everything that's not excluded. And one of the things that is excluded is collapse, unless it's covered by the collapse extension, which says collapse is covered if it causes damage to covered property, and it's caused by decay, among other reasons. And you can't then, once you realize that there is a covered cause of loss to underground pipes attached to the building, go back through the policy another time and say, but the definition of underground pipes attached to the building isn't modified for the purpose of the collapse extension, because you never had to leave the underground property section of the hotel endorsement. If the definition is changed, or if that was their intent, they had to say it clearly, because they have an obligation to make these exclusions so clear that a reasonable person who reads the policy in its entirety, not a lawyer, not an insurance company lawyer, not an insurance company specialist, can figure it out. And the phrase for this coverage extension doesn't lead you to believe that you're not covered for damage to underground pipes attached to the building. It just seems like it's legally is intended to mean that you are covered and the definition needs to be changed so that it's not ambiguous, because it can't be covered property and not covered property at the same time. Can you address your opponent's discussion of a corrosion exclusion? That the district court said that the parties agree that corrosion was a proximate efficient cause, and why doesn't that resolve the case against you? Because the corrosion exclusion, Your Honor, is one of several identified factors of decay or deterioration over time or latent defect. It's all the same exclusion. And so when collapse, the collapse extension says collapse caused by decay is specifically covered, that trumps the corrosion exclusion. It trumps it because corrosion is one kind of hidden decay that can cause collapse. Otherwise, you'd have issues where buildings would fall down. It would clearly be a collapse caused by hidden decay. And the judge could say, well, no, actually, because the decay was corrosion, it's still excluded under the corrosion exclusion. It would make the collapse endorsement illusory entirely. And your argument is that the pipe collapsed, right? You're no longer asking on appeal for coverage for the sinkhole, the quote unquote sinkhole, or for the earth movement. You're saying not that the earth collapsed, but that the pipe collapsed because of corrosion. If I may answer the question, yes, Your Honor, it's the pipe that collapsed. The experts were all on the same page that the wash from the storm caused the bottom to deteriorate to the point where the pipe actually crushed in. And it would not have been a loss, a covered loss, if the pipe was just corroded. But it is when the pipe collapses. If there's no other... Thank you, Mr. Lawson. Thank you both for your arguments. The case has been well presented. We appreciate your arguments this afternoon. We typically come down from the bench and greet you personally. Obviously, we can't do that this afternoon. But we thank you, nonetheless, for your able presentations. And we'll move on to the next case.
judges: Albert Diaz, Henry F. Floyd, Allison J. Rushing